**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-20506-CIV-SIMONTON**

**EDEL LEON, et al.,**

      **Plaintiffs,**

**v.**

**M.I. QUALITY LAWN**
**MAINTENANCE, INC., et al.,**

      **Defendants.**

_____/

<u>**ORDER ON POST-TRIAL MOTIONS**</u>

      This matter is before the Court on several motions, most of which concern Plaintiffs Edel Leon and Javier Gonzalez's request for liquidated damages and front pay, following a jury verdict that determined that these Plaintiffs were terminated from their employment with Defendants in retaliation for exercising their statutorily protected rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219 (the "FLSA"). Specifically, Plaintiffs have filed a Motion for Liquidated Damages on Back Pay Awarded to Plaintiff Edel Leon and Javier Gonzalez (DE # 196), to which Defendants have filed a Response (DE # 204), followed by Plaintiffs' Reply (DE # 208). Defendants' Response includes a Motion for Evidentiary Hearing (DE # 205), to which Plaintiffs have responded in their Reply in support of their Motion. In addition, before the Court is Plaintiffs' Motion for Front Wages (DE # 209). Defendants have filed a Response (DE # 217). Plaintiffs have filed no Reply, and the time for doing so has elapsed. Plaintiffs, however, filed the Expert Report of Stewart L. Appelrouth to support their claims for front wages (DE # 220-1). With regard to the Expert Report, Defendants have filed a Motion to Strike Plaintiffs' Expert Report, Expert Witness Testimony (DE # 229). Plaintiffs have filed a Response (DE # 235), which followed their filing of an Updated Expert Report (DE # 233-1). Finally,

Defendants filed a Motion for Extension of Time to File a Response to Court's Order Requiring Briefing (DE # 231), and a Motion for Extension of Time to Exchange Witness List *nunc pro tunc* (DE # 232). Pursuant to the consent of the parties, the Honorable Patricia A. Seitz, United States District Judge, has referred this case to the undersigned United States Magistrate Judge for all further proceedings (DE # 63).

On Monday, February 25, 2013, the undersigned held a bench trial on the issue of front wages, at which the parties presented evidence regarding an award of front wages, and provided argument on related matters (DE # 239). After a review of the record as a whole, and for the reasons stated below, (a) Plaintiffs' Motion for Liquidated Damages on Back Pay is granted; (b) Defendants' related Motion for Evidentiary Hearing is denied; (c) Plaintiffs' Motion for Front Wages is denied; (d) Defendants' Motion to Strike Expert Report, Expert Witness Testimony is granted; (e) Defendants' Motion for Extension of Time to Exchange Witness List is granted; and (f) Defendants' Motion for Extension of Time to File Response to Court's Order Requiring Briefing is granted. Plaintiff Edel Leon is entitled to an award of liquidated damages of $22,900.00, for a total award of $70,800.00; and Plaintiff Javier Gonzalez is entitled to an award of liquidated damages of $23,180.00, for a total award of $71,360.00.[1]

## I.    BACKGROUND

On July 17, 2012, after a jury trial, the jury returned verdicts in favor of Plaintiffs Edel Leon and Javier Gonzalez on their FLSA retaliation claims. As part of the verdicts, the jury found that "but for asserting [their] FLSA claim, [Plaintiffs] would not have been discharged, in other words, that the protected activity was a substantial, motivating cause that made a difference in the Defendants' decision" (DE ## 188, 192). As damages,

---

[1] The total award amounts include the jury's respective awards to the Plaintiffs for net loss of wages and benefits, as well as emotional pain and mental anguish, as further explained below.

the jury awarded Edel Leon $22,900.00 in net loss of wages and benefits from the time of the retaliation to the date of the verdict, and $25,000.00 in emotional pain and mental anguish (DE # 188).  Likewise, the jury awarded Javier Gonzalez $23,180.00 in net loss of wages and benefits from the time of the retaliation to the date of the verdict, and $25,000.00 in emotional pain and mental anguish (DE # 192). [2]

Following the jury's verdicts, the parties filed their Motions.

II.      **PARTIES' POSITIONS**

     A.      **Liquidated Damages**

Plaintiffs Edel Leon and Javier Gonzalez move for an award of liquidated damages equal in amount to the Plaintiffs' respective awards for net lost wages and benefits, pursuant to 29 U.S.C. § 216(b).  Plaintiffs argue in their Motion that, in this instance where the jury has found that Plaintiffs were retaliated against for asserting their rights under the FLSA, the Court must award liquidated damages because it would be "illogical, if not impossible," to argue, on the one hand, that Defendants retaliated against Plaintiffs and, on the other hand, that Defendants did so in good faith (DE # 196 at 3).  Plaintiffs further note that Defendants' alternative theories for Plaintiffs' departures, which Defendants presented at trial, have already been rejected by the jury.  As for Defendants' claims that their actions were taken on the advice of counsel, Plaintiffs state that Defendants fail to present evidence of a timeline that supports Defendants' claims that they conferred with counsel prior to terminating these Plaintiffs (DE # 208 at 3-4, 5).  With regard to Defendants' claims that their actions were objectively reasonable, Plaintiffs point out that the jury has already considered and rejected Defendants' arguments (DE # 208 at 4, 6-7).  Because no evidence of good faith was presented, Plaintiffs conclude, the Court should

---

[2] **According to the evidence presented at trial, Edel Leon was terminated from his position with Defendants on or about August 19, 2009, and Javier Gonzalez was terminated from his position with Mitchell's Lawn Corporation on or about September 14, 2009.  The date of the jury's verdicts was July 17, 2012.**

3

award liquidated damages to the Plaintiffs (DE # 196 at 3).  Finally, Plaintiffs argue that no evidentiary hearing is necessary since there is sufficient evidence in the record for the Court to makes its determination, and, thus, an evidentiary hearing would require the parties to incur unnecessary fees (DE # 208 at 9).

In response, Defendants contend that an award of liquidated damages is not mandatory if the Court finds that Defendants acted in good faith.  Relatedly, Defendants refute Plaintiffs' assertion that the Court cannot possibly find that Defendants retaliated in good faith (DE # 204 at 2).  The Defendants argue that they believed they were taking action in good faith (subjective good faith), and that they had reasonable grounds to believe they were complying with the FLSA (DE # 204 at 2-3).  As to subjective good faith, Defendants state that they sought the advice of counsel who instructed them not to terminate any employee except for reasons apart from an employee's assertion of his or her rights under the FLSA (DE # 204 at 3).  As to an objective basis, Defendants point to other evidence presented at trial that Mr. Leon was terminated for being disrespectful to others, and Mr. Gonzalez left employment on his own (DE # 204 at 4).  Finally, Defendants request that, if the Court is inclined to grant liquidated damages, the Court hold an evidentiary hearing on the issue (DE # 204 at 2).

On February 14, 2013, the Court entered the Order Granting Motion for Liquidated Damages and Denying Motion for Evidentiary Hearing (DE # 222), which granted Plaintiffs' motion for liquidated damages as set forth above, finding that, because Defendants could not prove that they terminated the Plaintiffs' employment in good faith pursuant to 29 U.S.C. § 260, the Defendants could not avoid liquidated damages.  The day before this Order was entered, however, on February 13, 2013, the Eleventh Circuit considered the issue of liquidated damages in FLSA retaliation cases in *Moore v. Appliance Direct, Inc.*, No. 11-15227, 2013 WL 516713, at *6 (11th Cir. Feb. 13, 2013).  The Eleventh Circuit held, *inter alia,* that the reasonable good faith exception of § 260 does

4

not make mandatory an award of liquidated damages on a retaliation claim pursuant to § 216(b). *Id.* at \*6-\*7. The Court found that, pursuant to the discretionary language of § 216(b), a court may (but is not required to) award liquidated damages on a retaliation claim "after determining whether doing so would be appropriate under the facts of the case." *Id.* at \*8.

Because the undersigned based the analysis in the earlier Order, at least in part, on the mandatory nature of liquidated damages due to Defendants' inability to satisfy the good faith exception of § 260, the Court entered an order vacating the Order Granting Motion for Liquidated Damages and Denying Motion for Evidentiary Hearing, and required the parties to brief the issue of the impact of *Moore* on their respective positions.

Each side responded with a brief supporting their positions (DE ## 230, 234). Plaintiffs first acknowledge that *Moore* declares that an award of liquidated damages on a retaliation claim is discretionary. Plaintiffs argue, nonetheless, that under the facts of this case, the Court should exercise its discretion and award liquidated damages to both Plaintiffs for three reasons (DE # 230 at 1). First, Plaintiffs argue that, unlike *Moore*, Plaintiffs are not made whole by the amounts the jury has awarded. In particular, Plaintiffs contend that the awards do not fully compensate them for the cost of sudden unemployment resulting from the retaliation, and for the time value dating back to the retaliatory acts, which occurred in 2009. Second, Plaintiffs assert that liquidated damages awards are appropriate because, unlike *Moore*, Plaintiffs seek (as liquidated damages) only to double their jury awards of economic damages, as opposed to including in the doubling their jury awards for emotional pain and mental anguish (DE # 230 at 2-3).[3] Finally, Plaintiffs argue that *Moore* is distinguishable because the unusual

---

[3] Plaintiffs abandoned this argument at the bench trial after the Court directed their attention to the Order in *Moore* (Case No. 09-CV-00224-KELLY, DE # 118), as well as an

facts of *Moore* required calculation of speculative damages, whereas the damages in this case are more apparent (DE # 230 at 3-4).

Defendants agree that *Moore* provides that liquidated damages in retaliation cases are not mandatory (DE # 234 at 2). Defendants further draw from the *Moore* decision the conclusion that, "if a company has a reasonable, non-retaliatory explanation for firing the employee, it can avoid liquidated damages, even when that explanation was insufficient to convince the jury to find in its favor" (DE # 234 at 3). In this case, Defendants continue, the jury did not find that the Plaintiffs' statutorily protected action was the only reason for their discharge, and Defendants provide other explanations for the terminations, revisiting the evidence presented at the jury trial (DE # 230 at 3-6).

In addition to briefing, the Court required that the parties be prepared to argue at the bench trial the impact of *Moore* on an any award of liquidated damages (DE # 226). At the bench trial, Plaintiffs noted that the discretion to award liquidated damages is broad, and could allow an award of more than double damages. Plaintiffs contended that, given the facts of this case, an award of at least double damages is appropriate, based upon the nature of the terminations and the length of time Plaintiffs have had to wait for relief. Defendants emphasized arguments they had presented in their earlier briefs, as described above.[4]

### B.  Front Pay

In their Motion for Front Wages, Plaintiffs move for an award of front wages as additional damages awards for Plaintiffs Edel Leon and Javier Gonzalez (DE # 209 at 1). Plaintiffs contend that reinstatement is impractical because of the acrimony between Plaintiffs and Defendants (DE # 209 at 2, 5-6). Plaintiffs further argue that an award of

---

excerpt of the transcript regarding jury instructions (DE # 159 at 143), which made clear that the jury awarded no damages for emotional pain or mental anguish.

[4] Defendants did not address their previous request for an evidentiary hearing, the denial of which had been vacated.

front wages is the only equitable remedy available other than reinstatement (DE # 209 at 5).

Plaintiff Edel Leon seeks an award of front wages for the time from the date of the jury's verdict through the age of 65, Edel Leon's anticipated date of retirement in approximately February 2030 (DE # 209 at 1, 3). He argues that he had worked with Defendants for 12 years prior to his termination, and that he had told Mitchell Igelko that Leon planned on working for Defendants until Leon retired. Therefore, Plaintiff concludes, an award through the date of retirement is reasonable (DE # 209 at 2). Plaintiff Leon calculates that the front wages required to place him in an identical financial position had he remained with Plaintiffs total $217,729.48 (not reduced to present value) (DE # 209 at 3).

Javier Gonzalez seeks an award of front wages for ten years from the date of the jury's verdict (DE # 209 at 2). He argues that he testified at trial that he planned on working for Defendant Mitchell's Lawn Corporation ("Mitchell's Lawn") an additional 10 to 15 years. Plaintiff concludes that, having already worked for Defendant for nine years, his contention that he planned on working for another 10 to 15 years is reasonable (DE # 209 at 2). Plaintiff Gonzalez calculates that the front wages due total $80,719.60 (not reduced to present value), not accounting for periodic raises in state or federally mandated minimum wage rates (DE # 209 at 4).

In their Response, Defendants agree that reinstatement is not a viable alternative, but they oppose Plaintiffs' Motion for Front Wages on several grounds (DE # 217 at 2). Defendants, first, challenge whether any award is appropriate, arguing that there exists no "egregious circumstances" necessitating an award of front pay (DE # 217 at 2). Relatedly, Defendants contend that Plaintiffs would have ultimately been fired, apart from any claimed retaliation (DE # 217 at 2, 4). In this respect, Defendants recount evidence set forth at the jury trial that Edel Leon made inappropriate comments toward others in or

around the work premises.  Defendants further point to evidence that Edel Leon was removing funds from Defendants' accounts without authorization (DE # 217 at 4-5).  As for Plaintiff Javier Gonzalez, Defendants reargue that he left of his own accord because he did not want to pay taxes on his earnings (DE # 217 at 5).

Finally, Defendants argue that Plaintiffs failed to mitigate their damages, and an award of front pay would result in overcompensation (DE # 217 at 2).  In this regard, Defendants note that evidence of mitigation presented at the jury trial was limited to Plaintiffs own self-serving testimony, and that other evidence that would have been helpful simply was not presented (DE # 217 at 3, 6).  As for the specific amounts sought, Defendants claim that they are "grossly exaggerated and unsubstantiated," and that an award of front pay would overcompensate Plaintiffs in light of their separate claims for liquidated damages (DE # 217 at 5).

At the bench trial on front wages, described in greater detail below, Plaintiffs primarily relied upon their positions as set forth in their Motion.  Plaintiffs further noted that both Plaintiffs were longtime employees of Defendants, and that no evidence had been presented of any other negative incidents with either Plaintiff prior to the circumstances giving rise to the terminations.  Plaintiff Javier Gonzalez further argued that the calculation of his front wages should be based upon what he should have earned working for Mitchell's Lawn, had he been properly paid, instead of his actual wages received.

In response at the bench trial, Defendants also highlighted the arguments they raised in response to the Motion.  Defendants generally claimed that Plaintiffs failed to prove any amount for front pay, and that the evidence with regard to the Plaintiffs' proper pay while working for Defendants was mixed, as supported by the jury's rejection of Edel Leon's claim for overtime compensation (DE # 188).  Furthermore, Defendants emphasized that the evidence set forth at the bench trial demonstrated that Edel Leon

8

had not attempted to mitigate his damages by seeking more lucrative employment. Defendants noted that Leon had not sought a higher paying job during his time with his current employer or a raise.  Defendants additionally noted that Plaintiffs had failed to meet their burden to prove the amount of health insurance paid by the Defendants on behalf of Edel Leon, as the evidence at the trial and the amount sought in Plaintiffs' Motion are significantly different.  As for the amount Defendants would have paid on Edel Leon's behalf for health insurance going forward (had he not been terminated), Defendants point out that there had been no evidence presented regarding the new rates.[5]  In addition, Defendants claimed that no evidence of "egregious circumstances" had been presented at the bench trial that would justify an award of front pay.  In contrast, Defendants argued that the Court must consider evidence of Edel Leon's poor treatment of office staff and others that was presented at the jury trial, along with evidence of embezzlement with which Edel Leon was allegedly connected.  Regarding the appropriate amount of front pay for Javier Gonzalez, Defendants argued that Plaintiffs' novel theory of basing an award of front pay on hypothetical back pay rates was not supported by the caselaw and called for undue speculation.  Moreover, Defendants asserted, an award through retirement would create a disincentive for Plaintiffs to find more lucrative work and, at any rate, Javier Gonzalez has secured employment earning him more than he did while working for Mitchell's Lawn.  Finally, Defendants argued that the Court must guard against overcompensation in light of Plaintiffs' separate request for liquidated damages.

---

[5] At the bench trial, the testimony revealed that Blue Cross Blue Shield was the insurance provider for Defendants through approximately the week of Edel Leon's termination, at which time Defendants switched providers, to United Healthcare.  A coverage letter from United Healthcare to Leon was admitted as an exhibit, but it contained no information regarding the amount of the premium.

III.    **BENCH TRIAL**

      A.      **The Expert Report and Testimony of Stewart L. Appelrouth**

Prior to the bench trial, Plaintiffs had submitted the Expert Report of Stewart L. Appelrouth on the issue of front wages (DE # 220-1). The Expert Report calculates the present value of the front wages due to Plaintiffs, assuming their work with Defendants until their respective retirements. The Report concludes that Plaintiff Edel Leon is entitled to $179,804.00, and Javier Gonzalez is entitled to $123,343.00 (DE # 220-1 at 1). Thereafter, Defendants filed their Motion to Strike the Expert Report along with any testimony of Mr. Appelrouth at the bench trial (DE # 229). Defendants argued that Plaintiffs failed to timely disclose Mr. Appelrouth and his expert report in accordance with the scheduling deadlines that preceded the jury trial, in violation of Fed. R. Civ. P. 26(a)(2) and S.D. Fla. L.R. 16.1(K). The untimely disclosure, Defendants continued, prejudiced Defendants because they have had no opportunity to depose Mr. Appelrouth or conduct any other related discovery, nor secure a rebuttal expert in time for the bench trial (DE # 229 at 3). Finally, Defendants asserted that Plaintiffs have provided no justification for the late disclosure (DE # 220 at 7).

Plaintiffs have filed an Updated Expert Report (DE # 233-1) and a Response to Defendants' Motion to Strike (DE # 235). Plaintiffs first noted that reinstatement of Plaintiffs is not an option in this case, because of the acrimonious relationship among the parties (DE # 235 at 1). With regard to the issue of front pay, however, Plaintiffs stated that they disclosed no witness initially because they intended for the Court, not the jury, to decide the issue (DE # 235 at 2). Nonetheless, Plaintiffs continued, as a practical matter, Defendants have been on notice for several months that Plaintiffs intended to introduce expert testimony and a related report on the issue of front pay, based upon counsel's correspondence (DE # 235 at 4). Relatedly, Plaintiffs added, Defendants took no action to strike the expert and his report for several months, despite

their knowledge (DE # 235 at 4-5).  Plaintiffs concluded that, at any rate, they disclosed the expert and his report 98 days before the bench trial, which satisfies Fed. R. Civ. P. 26(a)(2)(D)(i).  Finally, Plaintiffs argued that the motion to strike is not appropriate, contending that Defendants should have, instead, obtained their own expert report or otherwise responded to Plaintiffs', or timely requested Mr. Appelrouth's deposition (DE # 235 at 5).

Prior to the commencement of the bench trial, the Court heard argument on the Motion to Strike, and the parties outlined their positions as set forth in the Motion and Response.  Defendants noted at the hearing that Plaintiffs have not moved to reopen discovery.  Plaintiffs responded that any delay of the bench trial to reopen discovery would be unnecessarily costly, and that Defendants are not prejudiced by introducing evidence from the expert.

For the reasons stated in open court, which are herein incorporated by reference, Defendants' Motion to Strike is granted.  The undersigned notes that expert testimony is not required for a determination as to front wages.  *Warren v. County Comm'n of Lawrence County, Ala.*, 826 F. Supp. 2d 1299, 1311-12 (N.D. Ala. 2011).  Moreover, Plaintiffs never moved to bifurcate discovery and permit expert discovery to be conducted after the jury trial; or, to reopen the original discovery period.  Thus, the expert should have been disclosed in accordance with the earlier deadlines governing discovery prior to the jury trial.  *See* DE # 24.  The disclosure of the expert is well beyond the earlier deadlines, which Plaintiffs do not deny.  Moreover, Defendants are prejudiced by the inability to assess the expert opinion of Mr. Appelrouth and obtain a rebuttal expert, if appropriate.  Accordingly, the Motion to Strike is granted.

### B.   Other Matters Preliminary to the Bench Trial

Prior to the evidentiary portion of the bench trial, the Court addressed other procedural matters as well.  Specifically, for the reasons stated in open Court,

Defendants' Motion for Extension of Time to Exchange Witness List *nunc pro tunc* is granted.  Defendants' Witness List (DE # 232-1) is deemed timely exchanged.  In addition, Defendants' Motion for Extension of Time to File Response to Court's Order Requiring Briefing is granted.  Defendants' Memorandum of Law Regarding the Impact of *Moore* (DE # 234) is deemed timely filed.

        **C.**    **Findings of Fact – Edel Leon**

The bench trial moved forward with the parties' submitting evidence regarding front wages through the testimony of lay witnesses.  Specifically, Kelly Phillips, Edel Leon, Elsa Gelman and Javier Gonzalez provided testimony.  Unless otherwise noted, the testimony was uncontradicted.

The undersigned makes the following findings of fact regarding Plaintiff Edel Leon's front wage claims, based upon the evidence provided at the jury trial and the bench trial held on February 25, 2013:

        1.    Edel Leon worked for Defendants for 13 years.  He received periodic raises during that time.  At the time he was terminated, he made approximately $20.00 per hour.  Prior to working for Defendants, he worked at a mechanical repair shop for 16 years (EL-D).[6]  Edel Leon testified that he intended to work for Defendants until his retirement (EL-C).

        2.    About three months after being terminated from employment with Defendants, in approximately November 2009, Edel Leon began working for Equipment Sales of South Florida ("ESSF") as a small engine mechanic (KP-C, EL-C, PX 1).  While Edel Leon made $20.00 per hour while employed for Defendants, Edel Leon has

---

[6] For purposes of this Order, references to the testimony at the bench trial are made by using the witness' initials, followed by a dash, and "D" for direct examination or "C" for cross-examination.  The symbol "PX" is used to designate Plaintiffs' exhibits introduced at the bench trial.

only ever made $18.00 per hour while employed for ESSF (KP-D, EL-D).  At ESSF, he

works 40 hours per week with no overtime (KP-C).  He has no other income (KP-C).

       3.    Defendants paid for 100% of the cost of Edel Leon's

insurance coverage while he worked for Defendants (KP-D, EG-D).  The insurance was

provided by Blue Cross/Blue Shield HMO Open Access (KP-D).  The cost amounted to

$592.00 per month (KP-D).   Kelly Phillips was not covered under Edel Leon's insurance

(KP-D).  The insurance, however, covered (in addition to Edel Leon) his stepson, and

three children of Edel Leon and Kelly Phillips (KP-D).  There is a dispute regarding the

number of children who were covered under the Blue Cross policy, and whether those

children were authorized to be covered.  This dispute, however, is not material to the

resolution of the front pay issue.  There is no evidence as to how much Edel Leon's

health insurance with Defendants would have cost him, had he not had the children

under his coverage, nor is there evidence regarding the cost of the new health insurance

policy that was in effect at the time of Leon's termination.

       4.    With Edel Leon's current employer, ESSF, Edel Leon pays the

entire cost of his health insurance, which is provided through Neighborhood Health HMO

Open Access (KP-D).  Edel Leon has paid the entire cost of the insurance the entire time

he has worked for ESSF (KP-D, EL-D).

       5.    While at ESSF, Edel Leon had never looked for alternative

work until approximately four months ago.  When he finally looked for other work at that

time, his motivation was a concern that his current employer was going to cease doing

business (EL-C).  He inquired of two businesses before giving up his job search (EL-C).

He has otherwise expressed no desire to find alternative work to make more money, or to

seek a promotion entitling him to greater pay at ESSF (KP-C).  The undersigned finds,

based upon the testimony of Mr. Leon and his wife, Kelly Phillips, at the trial and at the

evidentiary hearing, that Mr. Leon is satisfied with his working arrangement at ESSF and

has no intention or desire to leave that employment for the purpose of finding more financially rewarding work.

        D.      <u>Findings of Fact – Javier Gonzalez</u>

      The undersigned makes the following findings of fact regarding Plaintiff Javier Gonzalez's front wage claims, based upon the evidence provided at the jury trial and the bench trial:

          1.      While working for Mitchell's Lawn, Javier Gonzalez generally worked 13 to 14 hours per day, and five to six days per week (JG-D).  Javier Gonzalez claims that he worked only four days a week on a limited number of occasions (JG-C), but Mitchell's Lawn's corporate representative, Elsa Gelman, claimed that Javier Gonzalez regularly worked four days a week (EG-D).  Mitchell's Lawn did not keep time cards for employees at the time, which could have shed light on this conflicting testimony (EG-D).  Javier Gonzalez testified that he worked an average of 69 hours per week for Mitchell's Lawn during the latter part of his tenure.  Mitchell's Lawn first paid him $70.00 per day, and later paid him $78.00 per day when he became a driver (JG-D, EG-D).  The undersigned credits the testimony of Javier Gonzalez, which, based upon the jury verdict, was necessarily credited by the jury in reaching its verdict.

          2.      Javier Gonzalez currently works for Cactus Lawn Service, Corp. ("Cactus").  He has worked there for over two years.  It is the only place he has worked since being terminated from Mitchell's Lawn (JG-D, PX 2).  Mr. Gonzalez has not sought more financially rewarding employment during his tenure at Cactus.  He normally works five days per week during the busy season, and otherwise three to four days per week.  When he began with Cactus, he was paid the daily rate of $80.00, and he now earns $90.00 per day after receiving a raise about a year ago (JG-D).  The jury verdict compensated Mr. Gonzalez for his back pay through the date of the verdict; therefore, it is unnecessary to determine the precise date that his employment began at Cactus.  At

the jury trial, Mr. Gonzalez did not seek any compensation based upon lost wages *after*

the date he began his employment at Cactus.

        3.      Javier Gonzalez received no health insurance while working

for Mitchell's Lawn (JG-D).

    **IV.**    **LIQUIDATED DAMAGES FOR RETALIATION CLAIMS**

    As noted above, Plaintiffs seek an award of liquidated damages in an amount

equal to their respective awards for net lost wages and benefits.  For the reasons stated

below, under the circumstances of this case, the undersigned finds appropriate an award

of liquidated damages for both Plaintiffs.

    **A.**    **Legal Standards**

    As 29 U.S.C. § 216(b) states, in pertinent part,

> Any employer who violates the provisions of section 215(a)(3) of this title[,
> i.e. retaliatory discharge,] shall be liable for such legal or equitable relief as
> may be appropriate to effectuate the purposes of section 215(a)(3) of this
> title, including without limitation employment, reinstatement, promotion,
> and the payment of wages lost and an additional equal amount as
> liquidated damages.

    An award of liquidated damages for retaliation under the FLSA is discretionary,

and the Court's discretion is broad.  *Moore v. Appliance Direct, Inc.*, No. 11-15227, 2013

WL 516713, at *6 (11th Cir. Feb. 13, 2013).  The Court in *Moore* held,

> There is no more basis in the language of the [portion of § 216(b) quoted
> above] for holding that liquidated damages are required to be awarded in a
> retaliation case, than there would be for requiring reinstatement, or
> promotion, or front pay.  Whatever is awarded must be appropriate to
> effectuate the purposes of the retaliation provision, and determining that
> requires the exercise of wide discretion.

*Id.* (citation omitted).   The court bases its analysis on the facts of a particular case to

determine whether an award of liquidated damages would "effectuate the purposes" of

the anti-retaliation provision.  *Id.* at *8.

    As for the purposes of the anti-retaliation provision, the Eleventh Circuit has

noted, "The primary purpose of the anti-retaliation provision is to ensure that fear of

retaliation does not 'operate to induce aggrieved employees quietly to accept substandard conditions.'" *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1336-37 (11th Cir. 2002) (citation omitted).   Relatedly, while the general purpose of § 216(b) is to compensate a plaintiff, the effect of the liquidated damages provision is to deter an employer from violating the FLSA's anti-retaliation provision. *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 935 n.13 (11th Cir. 2000).

> B.   <u>Analysis</u>

At the outset, the undersigned notes that, under *Moore*, the Court's discretion to award liquidated damages in cases of retaliation is broad. *Moore*, 2013 WL 516713, at *6. The undersigned further notes that, as the undersigned stated at the bench trial, the jury's verdicts in finding that Mitchell Igelko had retaliated against Plaintiffs for asserting their FLSA claims was supported by the testimony and other evidence presented at the jury trial.

The undersigned, thus, turns to the purposes of the FLSA's anti-retaliation provision to determine whether an award of liquidated damages would "effectuate" its purposes. *Id.* at 8.  As the Eleventh Circuit has noted, the primary purpose of this provision is to "ensure that fear of retaliation" does not lead employees to quietly bear FLSA violations. *Bailey*, 280 F.3d at 1336-37.  Further, the undersigned considers the effect liquidated damages can have in deterring employers from violating the FLSA's anti-retaliation provision. *Snapp*, 208 F.3d at 935 n.13.

In this legal framework, the undersigned highlights specific testimony provided at the jury trial as an example to support an award of liquidated damages.  Specifically, Mitchell Igelko's testimony demonstrates his general belief in the rightfulness of his retaliatory acts, along with his displeasure toward those asserting FLSA claims, and his sense of vindication or entitlement in retaliating against such employees, which went beyond the Plaintiffs in this case.  For example, when asked about Kelly Phillips and Edel

Leon soliciting Defendants' employees to join the Plaintiffs' lawsuit, Mr. Igelko explained that he or his wife had "caught them" and "threw them out" (July 5th, p. 125).  He continued, referring to other employees who had joined the suit, stating, "The ones that had no brains, I think it sounded very good, they joined and now they don't have a job. They don't have anything."  (July 5th, p. 126).  While Mr. Igelko also testified to taking measures to improve employee documentation and timekeeping records, such proactive measures run counter to his comments about retaliation.  His attitude toward those employees who "had no brains," i.e. those who apparently sought to remedy FLSA violations, is found elsewhere in his testimony as well.  For example, he spoke negatively more than once about those considering joining the lawsuit, referring to them once as those hoping to "make a quick buck" (July 5, 2012, p. 73).  While the circumstances surrounding the discharge of the Plaintiffs provide their own unique sets of facts, Mr. Igelko's testimony demonstrates that his negative disposition toward those seeking relief under the FLSA was not limited to Plaintiffs.  His views are more akin to encouraging "aggrieved employees quietly to accept substandard conditions."  *Bailey*, 280 F.3d at 1336-37, and run counter to the purposes of the FLSA's anti-retaliation provision.

Defendants' detailed position that the Plaintiffs were terminated from employment for other legitimate reasons is somewhat misplaced.  As *Moore* directs, the undersigned's analysis does not focus on whether Defendants might have had other legitimate bases for terminating these specific Plaintiffs – the jury specifically found that "but for" the assertion of protected rights, the Plaintiffs would not have been terminated. Rather, the broader question is whether, under the facts of the case as a whole, an award of liquidated damages is appropriate to promote the FLSA's anti-retaliation provision.  As discussed above, Mr. Igelko's general attitude toward sanctioning employees for raising FLSA claims, as well as the specific circumstances of Plaintiffs' terminations as found by the jury, favor an award of liquidated damages.  Accordingly, in the Court's discretion,

the undersigned finds that an award of liquidated damages under these circumstances, in an amount equal to the jury's respective awards to Plaintiffs Edel Leon and Javier Gonzalez for their net lost wages and benefits, is appropriate to promote the purpose of the FLSA's anti-retaliation provision, and to deter employers from violating it in the future.[7]

## V.   FRONT PAY

Plaintiffs also seek a supplemental award of front pay.  For the reasons stated below, under the circumstances of this case, the undersigned declines in its discretion to award front pay to either Plaintiff.

### A.   Legal Standards

Through 29 U.S.C. § 216(b), as quoted above, front pay is also available to a prevailing plaintiff on a retaliation claim.  An award of front pay, likewise, falls within the court's broad discretion and should be awarded as necessary to "effectuate the purposes" of 29 U.S.C. § 215(a)(3).  *See Moore*, 2013 WL 516713, at *6, *8 (addressing liquidated damages, but noting the discretionary nature of front pay as well).  Front pay has been defined as "the difference (after proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future in his next best employment."  *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995) (citation omitted).   The purpose of an award of front pay is to put a plaintiff "in the identical financial position that he would have occupied had he been reinstated," in situations when reinstatement is not feasible, such as when "debilitating frictions between employer and employee can be anticipated" that would require ongoing court supervision of the relationship.  *Id.* (citation omitted).  The court should be mindful, however, in cases where liquidated

---

[7] The Court's discretion to award liquidated damages is particularly appropriate in this case since the Court has declined to award front pay.

damages are awarded and front pay is also sought, of the possibility that an award of both would result in overcompensation. *Avitia*, 49 F.3d at 1232; *accord Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346-47 (M.D. Fla. 1999).

Because a front pay calculation is a "prediction of a series of future events.... [,] crafting a front pay award necessarily entails some degree of speculation." *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 31 (1st Cir. 2012) (discussing front pay calculations in a claim of age discrimination and retaliation). A court, however, will consider several factors, including the length of time the plaintiff expected to work for the defendant and the applicable discount rate. The plaintiff bears the initial burden to set forth the basis for the amount sought, and the defendant may challenge the evidence and assert as an affirmative defense a failure to mitigate damages. In this respect, a court may consider other reasonable employment opportunities, a reasonable time to find such other employment, the nature of the work (and plaintiff's ability to perform physically), and any separate award of liquidated damages. *Warren v. County Comm'n of Lawrence County, Ala.*, 826 F. Supp. 2d 1299, 1311-12 (N.D. Ala. 2011). The precise method for computing front pay has not been set forth by the Eleventh Circuit. *Id.* at 1312. The Court in *Warren*, however, in reviewing methods employed by other courts, noted that the basic method is a calculation of the difference between what an employee would have made from the former employer, versus what the employee could expect to make from a new employer. *Id.* at 1312-13.

Finally, expert testimony on the issue of front pay is not necessary for a party to be awarded front pay. *Warren*, 826 F. Supp. 2d 1299, 1311 (N.D. Ala. 2011).

B.   Analysis

At the outset, the undersigned notes that no one disputes the fact that, as broadly supported by evidence set forth at the jury trial, reinstatement is not feasible due to the acrimonious relationship among the parties. This conclusion, however, does not

necessarily result in an award of front pay because an analysis of front pay starts from the same departure point as an examination of whether liquidated damages are appropriate. In particular, 29 U.S.C. § 216(b) provides the Court with broad discretion to determine the appropriateness of a front pay award. *See Moore*, 2013 WL 516713, at *6, *8. Similarly, a concern for effectuating the purposes of the anti-retaliation provision guides the Court's analysis. The undersigned, however, must additionally consider the appropriateness of an award of front pay in light of the undersigned's ruling above finding appropriate an award of liquidated damages. Specifically, the undersigned should guard against overcompensation. *See Avitia*, 49 F.3d at 1232.

With this framework in mind, the undersigned finds that the awards of liquidated damages provided above suffice to further the purposes of the anti-retaliation provision and, thus, an award of front pay for either Plaintiff is not appropriate. The undersigned's conclusion is supported by additional circumstances of Plaintiffs' jury awards. Notably, the Plaintiffs were awarded amounts they requested at the jury trial, and their awards were comparable to one another. The bases for the jury's calculations are, of course, unknown, but Edel Leon received $22,900.00 in net lost wages and benefits through the time of trial, plus an additional $25,000.00 for emotional pain and anguish, and Javier Gonzalez was awarded the $23,180.00 he requested, and an additional $25,000.00 for emotional pain and anguish (DE ## 188, 192). The undersigned finds that the jury's awards were supported by the evidence presented during the jury trial. Moreover, the jury's awards covered back pay for a period of almost three years from the date of each Plaintiff's termination. In addition, with the awards of liquidated damages, each Plaintiff will receive an additional amount equal to their award for net lost wages and benefits. Thus, given the facts and circumstances of this case described above, and Plaintiffs' multiple awards for amounts requested, additional relief would not seem to further effectuate the purposes of the FLSA's anti-retaliation provision.

The undersigned also has considered the current circumstances of the Plaintiffs, as demonstrated by the evidence.  In particular, with regard to Edel Leon, the testimony at the bench trial revealed that Edel Leon has demonstrated no interest in pursuing a higher paid position or a raise in his current job, despite being compensated since 2009 at a lower rate than when he worked for Defendants.  In fact, he appears to have sought alternative work only during one time period, about four months ago, when Edel Leon was temporarily concerned that his current employer might close down.  The undersigned factors in Edel Leon's motivation to make himself whole, so to speak, when considering whether a front pay award is appropriate.  With regard to Javier Gonzalez, while the evidence is limited and more uncertain as to his past and current pay statuses, Mr. Gonzalez is not heard to complain that he is worse off in his new employment.  Moreover, Plaintiffs have failed to present evidence to counter Defendants' claim that Javier Gonzalez has failed to mitigate his damages.  Therefore, upon a review of the record as a whole, the undersigned finds that an award of front pay would not further the purposes of the anti-retaliation provision because the additional effect of a front pay award to encourage other employees to bring forth FLSA claims despite retaliation concerns is *de minimis*, and, thus, no award for front pay for either Plaintiff is appropriate.

While the parties have engaged in extensive argument as to the appropriate measure of front pay, the undersigned finds that, given *Moore*'s ruling with regard to liquidated damages, and applying the Court's rationale to consideration of an award for front pay, the proper measure of front pay is secondary to an initial determination as to whether front pay is necessary to effectuate the purposes of the anti-retaliation provision.  Having found an award inappropriate, the undersigned does not reach a determination of the appropriate measure for front pay.

VI.   **CONCLUSION**

Therefore, upon a review of the record as a whole, and for the reasons stated above and at the bench trial, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Liquidated Damages on Back Pay Awarded to Plaintiff Edel Leon and Javier Gonzalez (DE # 196) is **GRANTED**. Plaintiff Edel Leon is awarded liquidated damages in the amount of $22,900.00, in addition to the equal amount of actual damages awarded by the jury, for a total award of $70,800.00.  Plaintiff Javier Gonzalez is awarded liquidated damages in the amount of $23,180.00, in addition to the equal amount of actual damages awarded by the jury, for a total award of $71,360.00.[8]   It is further

**ORDERED AND ADJUDGED** that Defendants' Motion for Evidentiary Hearing (DE # 205) is **DENIED**.  It is further

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Front Wages (DE # 209) is **DENIED**.  It is further

**ORDERED AND ADJUDGED** that Defendants' Motion to Strike Plaintiffs' Expert Report, Expert Witness Testimony (DE # 229) is **GRANTED**.  It is further

**ORDERED AND ADJUDGED** that Defendants' Motion for Extension of Time to File a Response to Court's Order Requiring Briefing (DE # 231) is **GRANTED**, *nunc pro tunc*.  It is further

**ORDERED AND ADJUDGED** that Defendants' Motion for Extension of Time to Exchange Witness List *nunc pro tunc* (DE # 232) is **GRANTED**, *nunc pro tunc*.

---

[8] The respective total amounts for the Plaintiffs reflect that the jury also awarded each Plaintiff $25,000.00 for damages in the form of emotional pain and mental anguish.

**DONE AND ORDERED** at Miami, Florida, on February 28, 2013.

_Andrea M. Simonton_

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**

**All counsel of record**