**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-20506-CIV-SIMONTON**

EDEL LEON, JAVIER GONZALEZ,
et al.,

       **Plaintiffs,**

v.

**M.I. QUALITY LAWN**
**MAINTENANCE, INC., et al.,**

       **Defendants.**

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR RELIEF
## FROM FINAL JUDGMENT AND FOR SANCTIONS

       This matter came before the Court upon Defendants' Motion for Relief From Final

Judgment and For Sanctions, ECF No. [328].[1]  The Plaintiffs have filed a Response, ECF

No. [336].  The Defendants did not file a Reply; although the Defendants responded to the

Plaintiffs' arguments during oral argument held by the Court, ECF No. [404].

       After a thorough review of the record, the undersigned concludes that the

Defendants are not entitled to the relief they seek because: 1) pursuant to Rule 60(b) the

Defendants' Motion is not timely and the Defendants have failed to demonstrate that they

were unable to present their case fully and fairly due to the alleged improper actions of

Plaintiffs; 2) the Defendants have failed to demonstrate that the judgment was obtained

by "fraud on the court" as required to invoke the Court's inherent powers, as noted in

Rule 60(d)(3); and, 3) the Defendants' request for an award of attorneys' fees pursuant to

the Court's inherent powers to sanction Plaintiffs' misconduct is untimely.  Accordingly,

---

[1] The Honorable Patricia A. Seitz, United States District Judge, has referred this matter to
the undersigned for all necessary and proper action as required by law including trial by
jury and entry of final judgment, ECF No. [96].

the Defendants' Motion for Relief From Final Judgment and For Sanctions, ECF No. [328], is Denied.

## I.  BACKGROUND

This action involves claims by five workers, including Plaintiff Edel Leon, against their former employer, a lawn maintenance company, M.I. Quality Lawn Maintenance, ("M.I. Quality") and its owner, Mitchell Igelko, for overtime violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA").  In the Amended Complaint, Plaintiffs Leon and Gonzalez also alleged retaliatory discharge in violation of that Act, ECF No. [6].[2]

On July 17, 2012, following a ten-day trial, the jury found in favor of Plaintiffs Javier Gonzalez and Edel Leon on their retaliation claims.  The jury awarded Javier Gonzalez $23,180.00 in damages for net loss of wages and benefits and $25,000.00 in damages for emotional pain and anguish.  The jury awarded Edel Leon $22,900.00 in damages for net loss of wages Yeand benefits and $25,000.00 in damages for emotional pain and anguish, ECF Nos. [192] [188].  After determining that Plaintiffs Gonzalez and Leon were entitled to an award of liquidated damages, on February 28, 2013, the Court entered final judgment in favor of Leon in the amount of $70,800.00 and in favor of Gonzalez in the amount of $71,360.00, ECF Nos. [241] [242].

More than nine months after the entry of Final Judgment, the Defendants filed the instant Motion for Relief from Final Judgment and for Sanctions, ECF No. [328].  In that Motion, the Defendants seek relief from the Final Judgment entered on behalf of Edel Leon based upon the Defendants' contention that Plaintiff Leon's judgment was obtained through fraud and Leon's perjurious testimony at trial, ECF No. [328].

[2] This action was severed from 09-22243-CIV-SEITZ, another FLSA action against the same Defendants.  The other Plaintiffs in the action whose cases were tried with Plaintiffs Gonzalez and Leon are Kelly Phillips, Luisa Ginsberg and Luis Solorzano. Those Plaintiffs are not involved in the instant Motion.

The undersigned stayed enforcement on Plaintiff Leon's Judgment pending an evidentiary hearing on the Motion, ECF No. [339].[3]

## II.   THE POSITIONS OF THE PARTIES

As stated above, following entry of Final Judgment on behalf of Plaintiffs Edel Leon and Javier Gonzalez's claims for retaliatory discharge, Defendants filed the instant Motion seeking to set aside Leon's judgment pursuant to Federal Rule of Civil Procedure 60(b)(3).  Defendants allege that Leon, with the assistance of his wife, Plaintiff Kelly Phillips, obtained a judgment by fraud and repeatedly perjured himself during his trial, ECF No. [328] at 2-3.  In the Motion, the Defendants allege the following specific acts of fraud, misrepresentation, and/or misconduct: 1) Phillips stated under oath that Leon was not receiving overtime at his new employment when, in fact, he was: 2) Leon and Phillips stated under oath that Leon was paying 100% of his health insurance at his new employment when, in fact, he was not; 3) Leon and Phillips stated under oath that it took Leon about three (3) months to find a new job when, in fact, it did not; 4) Phillips requested that Mr. Cooper [Leon's new employer] pay Leon his overtime via separate checks—outside of payroll—so that if Defendants' attorneys contacted Mr. Cooper or requested documents from him, they would not discover that Leon was, in fact, receiving more compensation than what he was testifying to during his depositions, the jury trial in this case, and the bench trial on front wages; and 5) Phillips admitted to Mr. Cooper that Leon was not emotionally distressed by surveillance cameras and, instead, was only saying that to get more money awarded to him in the underlying lawsuit, ECF No. [328] at 3.

---

[3] In addition, the Court denied the Verified Motion for Attorneys Fees filed on behalf of both Plaintiffs Gonzalez and Leon, ECF No. [250], pending the resolution of the Defendant's Motion for Relief from Judgment, ECF No. [339]. Subsequent to the instant Motion being filed, Plaintiff Gonzalez filed a Partial Satisfaction of Judgment which states that he has received payment from Defendants in full satisfaction of the Final Judgment in favor of Plaintiff Gonzalez, ECF No. [376].

In support of these claims, the Defendants have submitted an Affidavit from Lance Cooper, the owner of Best Equipment & Repair, Inc., and Best Vest Corporation, which conducts business as Perrine Rentals, ECF No. [329]. According to the Affidavit, on or about August 10, 2009, Edel Leon applied for a job at Perrine Rentals, and began working during the week of August 24, 2009, ECF No. [329] at ¶¶ 3, 5.[4] The Affidavit generally describes the negotiations between Lance Cooper, Edel Leon and Edel Leon's wife, Kelly Phillips, related to the terms of Edel Leon's employment, including benefits and rate of pay, at Perrine Rentals. In the Affidavit, Lance Cooper states that Kelly Phillips was very adamant about the way Edel Leon was to receive his pay, insisting that Cooper only pay Leon for overtime through a supplemental check outside of payroll so that it would appear that Leon was making less money which would help Phillips and Leon in their lawsuit against Mitchell, ECF No. [329] at ¶ 8. The Affidavit discusses the health insurance provided to Leon through Perrine Rentals, and wage payments made to Leon between August 2009 to January 2013. Throughout the Affidavit, Lance Cooper also discusses his interaction with Defendant Mitchell, and the lawsuits between the Plaintiffs and Defendant Mitchell. Finally, Cooper states that when Perrine Rentals closed in November of 2012, Leon was transferred to Best Equipment where Leon worked while being under video surveillance, without incident, ECF No. [329] at ¶¶ 20, 21.[5]

---

[4] The Affidavit states that Leon began working during the week of August 24, *2013*. The undersigned presumes that the 2013 date is an error, and the date that Lance Cooper avers Leon began working is during the week of August 24, *2009*.

[5] Lance Cooper's Affidavit references several documents related to Edel Leon's employment with Perrine Rentals that are attached to the Affidavit. Specifically, the Defendants have submitted Edel Leon's Application for Employment indicating that Leon is available to begin work on August 24, 2009, and Lance Cooper's handwritten notes, ECF No. [329-1], a copy of Perrine's bookkeeping records for payments made to Leon between September 2, 2009 and November 30, 2012, ECF No. [329-2], and Perrine Rentals' 2009 and 2010 payroll records, which reflect certain health insurance plan deductions, ECF No. [329-3] [329-4].

As to the timeliness of the Defendants' Motion, the Defendants assert that on March 11, 2013, Edel Leon and Kelly Phillps, filed a separate action in this District against Mitchell's Lawn and Mitchell Igelko seeking an award of damages for retaliation and slander arising from the Defendants' purported actions which related to this matter, (13-20854-CIV-MORENO) (hereinafter "The Defamation Action."). Defendants assert that while investigating The Defamation Action, Defendants' Counsel interviewed Lance Cooper, a witness in that action, and discovered that Leon and Phillips had concocted and filed this instant lawsuit to fraudulently obtain a Final Judgment against the Defendants, ECF No. [328] at 2-3.

Based upon the information obtained from Lance Cooper, Defendants argue that Leon and Phillips' perjured testimony was critical to the judgment because the jury awarded Leon the exact amount in damages that Leon would have made from Defendants during the three months he was unemployed. As relief, the Defendants seek an Order staying the enforcement of Leon's final judgment pending the resolution of the instant motion, sanctions against Leon and Phillips and ultimately an Order setting aside the final judgement.

In response, Plaintiff Leon argues that Cooper has fabricated evidence against Leon and calls into question Cooper's motives for coming forward, ECF No. [336] at 4-5. Plaintiff depicts Cooper as a bitter bankrupt who holds a grudge against, and personal animosity toward, both Leon and his attorneys. Plaintiff argues that, at best, Defendants advance only a factual attack on Leon's judgment, which is not a proper basis to grant a Rule 60(b)(3) motion. Plaintiff also argues that fraud between parties and perjury does not constitute a "fraud on the court" requiring a court to set aside a judgment; rather, only the most egregious conduct, such as bribery of a judge or members of the jury constitutes "fraud on the court." ECF No. [329] at 7-8, 10-12. Plaintiff also maintains that

Defendants' request for relief should be denied for their lack of diligence in pursuing the Cooper evidence since it could have been discovered before the trial of this matter.

The Plaintiffs have also submitted Affidavits from Edel Leon and Kelly Phillips that deny many of the allegations set forth in Lance Cooper's Affidavit, and reassert that Edel Leon did not begin working for Perrine Rentals until November of 2009, ECF Nos. [336-3] [336-4]. In addition, in her Affidavit, Kelly Phillips denies that she discussed with Lance Cooper emotional distress damage claims raised by Edel Leon, or anything regarding cameras, ECF No. [336-3] at 3.

### III.  LEGAL FRAMEWORK AND ANALYSIS[6]

#### A.  Relief from Judgment Pursuant to Fed. R. Civ. P. 60(b)(3),

Rule 60(b)(3) permits relief from judgment where the movant shows "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).  To obtain relief under Rule 60(b)(3), "the moving party must prove by clear and convincing evidence that the adverse party

---

[6] **Rule 60. Relief From a Judgment or Order, provides in relevant part,**

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:**

**. . .**

**(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;**

**. . .**

**(c) Timing and Effect of the Motion.**

**(1) Timing. A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.**

**(d) Other Powers to Grant Relief. This rule does not limit a court's power to:**
**. . .**
**(3) set aside a judgment for fraud on the court.**

obtained the verdict through fraud, misrepresentations, or other misconduct. The moving party must also demonstrate that the conduct prevented them from fully presenting his case." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003) (citation omitted).  In addition, Fed. R. Civ. P. 60(c) provides that a motion under Rule 60(b)(3) must be made within a reasonable time and no more than a year after the entry of the judgment or order or the date of the proceeding.

For the following reasons, the undersigned denies the Defendants' request to set aside the judgment based upon Rule 60(b)(3)

### 1. *The Defendants' Motion Was Not Made within a Reasonable Time*

Final Judgment in this case was entered in favor of Edel Leon and Javier Gonzalez on February 28, 2013, and the instant Motion was filed on December 4, 2013.  Thus, the Motion was filed within one year after the entry of judgment, ECF Nos. [242] [328].  However, a motion is not timely pursuant to Rule 60 merely because it was filed less than one year after the entry of judgment. *See Harduvel v. General Dynamics Corp.*, 801 F. Supp. 597 (M.D. Fla. Aug. 15, 1992) (citing *White v. Am. Airlines, Inc.,* 915 F.2d 1414, 1425 (10th Cir. 1990)).  Rather, the Rule expressly requires that the motion also be filed within a "reasonable" time.  "A determination of what constitutes a reasonable time depends on the circumstances in an individual case, and in making the determination, courts should consider whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." *Rease v. AT&T Corp.*, 358 F. App'x 73, 75 (11th Cir. 2009) (citing *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275-76 (11th Cir. 2008) (internal quotations omitted).

Here, in addition to arguing that the Motion is timely because it was filed within one year from entry of the Final Judgment, the Defendants argue that the Motion was brought within a reasonable time because "Defendants only discovered the facts cited herein during their discovery of the allegations in the recently filed Defamation

Complaint and have acted with due diligence since said discovery to verify the accuracy of all the information discovered before presenting it to the Court." ECF No. [328] at 15.

The Defendants' contention that they have acted with due diligence regarding the Plaintiffs' alleged perjurious conduct is belied by the record. As discussed in detail below, the record establishes that prior to trial, the Defendants had sufficient information to believe that Plaintiff Leon was not truthful in his assertions in his deposition regarding when he obtained employment after being terminated by the Defendants. *See infra*, pgs. 10-15. The "newly" discovered evidence cited by Defendants does not unearth new, previously unknown acts of perjury, but rather confirms what the Defendants believed at the time of trial, and at the time of the entry of the final judgment; that Leon lied about his subsequent employment. Further, none of the "new" discovery that the Defendants rely upon to establish their contention that their Motion is timely, support their contention that it was Leon and Phillips' plan "to make it appear as if Leon's firing was retaliatory measure" as alleged in by the Defendants in the Motion, ECF No. [328] at 16. Rather, almost all of the evidence presented in the Lance Cooper Affidavit and the attachments, other than the discussion of surveillance cameras, relate to the timing and details of Leon's employment at Perrine Rentals, and not the circumstances of his termination by the Defendants. As such, it is unclear why the Defendants did not seek relief related the Plaintiffs' actions until December 4, 2013, nearly fifteen months after the jury's July 12, 2012 verdict, and more than nine months after the Court's February 28, 2013, entry of Final Judgment in favor of the Plaintiffs.[7]

---

[7] The Court recognizes that the Defendants seek relief under Rule 60, which pertains to Relief from a Judgment or Order. Given that the information that gives rise to the Defendants' claims of perjury was known to the Defendants prior to the trial and thus prior to the entry of the Final Judgment, the Defendants could have raised these issues during trial and well before entry of the Final Judgment if the jury had reached an adverse verdict, and through a Rule 59 Motion.

Further, although arguably the Plaintiffs have not suffered significant prejudice, other than a delay in satisfaction of the monetary judgment, the Plaintiffs, like all parties, have an interest in finality, which in this case was delayed by the Defendants' filing of the instant Motion. *See Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)). Simply put, given that the Defendants were aware of the facts related to the Plaintiffs' purported misconduct, the undersigned concludes that the Defendants have not established that the Motion seeking relief from judgment was brought within a reasonable time.

Other Courts have similarly held that a party's failure to seek Rule 60(b) relief within a reasonable time, where the party knew of the grounds for such relief, is a basis for denying a Rule 60(b) motion. *See Stansell v. Revolutionary Armed Forces of Colombia,* 771 F. 3d 713, 738 (11th Cir. 2014) (refusing to consider 60(b)(3) claims where five-month delay in filing motion for relief was unreasonable); *Jimenez v. Stone*, 604 F. App'x. 753, 755 (10th Cir. 2015) (concluding that plaintiff's eight-month delay in filing 60(b)(3) motion based on fraud was unreasonable where plaintiff knew or reasonably should have known the purported grounds for motion much earlier); *Columbia Communications Corp. v. EchoStar Satellite Corp.*, 2 F. App'x. 360, 367 (4th Cir. 2001) (finding fifteen month delay in bringing 60(b)(3) motion unreasonable, when issues of case were briefed and argued before and during trial); *DiVito v. Fid. & Deposit Co.*, 361 F.2d 936, 939 (7th Cir. 1966) (finding defendant had offered no convincing explanation of its four and one-half month delay, after discovery of significant evidence of fraud); *Del Fuoco v. Wells*, Case No. 8:03–CV–161–T–23TGW, 2007 WL 42960, at *6 (M.D. Fla. Jan.4, 2007) (observing that plaintiff failed to provide any reason at all, much less a good reason, why the information contained in the documents was not presented sooner than it was); *Nat'l Org. for Women, Inc. v. Scheidler*, Case No. 86 C 7888, 2001 WL 301143, at *5 (N.D.Ill. Mar. 28, 2001) (opining delay of seven months between learning of basis for Rule 60(b)(3) motion and filing was unreasonable where no proffered explanation provided).

Accordingly, the undersigned finds it appropriate to deny the Defendants' Motion on this basis alone, but as discussed below, also finds that the Defendants have failed to meet the other requirements of Rule 60(b)(3), to warrant the relief they seek.

### 2. The Defendants Have Not Demonstrated that They Were Unable to Present Their Case Fully and Fairly Due to Plaintiffs' Conduct

Even assuming *arguendo* that the Defendants brought the claims raised in the instant Motion within a reasonable time, and that Plaintiff Leon and Phillips perjured themselves, the Defendants would still not be entitled to the relief they seek because the Defendants have not demonstrated that they were unable to present their case fully and fairly due to Plaintiffs Leon and Phillips' alleged misconduct. "A party cannot successfully bring a Rule 60(b)(3) motion where the 'pursuit of the truth was [not] hampered by anything except [the movant's] own reluctance to undertake an assiduous investigation.'" *Armstrong v. The Cadle Co.*, 239 F.R.D. 688, 695 (S.D. Fla. 2007) (internal citation omitted) (alterations in original)). See also *Diaz v. Methodist Hosp.*, 46 F.3d 492, 497 (5th Cir. 1995) ("When a party is capable of fully and fairly presenting her case notwithstanding 'fraud, misrepresentation, or other misconduct,' the trial court does not err when it denies a Rule 60(b)(3) motion."). Indeed, the purpose of Rule 60(b)(3) is not to correct outcomes that may be factually incorrect, but to rectify those that were unfairly obtained. *See Diaz,* 46 F.3d at 497; *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 21–22 (1st Cir. 2002) ("When a party is capable of fully and fairly preparing and presenting his case notwithstanding the adverse party's arguable misconduct, the trial court is free to deny relief under Rule 60(b)(3)."); 12 James Wm. Moore, Moore's Federal Practice, ¶ 60.43[1][c] (3d ed.1998) ("Rule 60(b)(3) should not reward the lazy litigant who did not adequately investigate his or her case. ...").

Here, the record clearly establishes that well in advance of the trial, the Defendants had reason to believe and evidence to support a claim that, despite Plaintiff

Leon's representations to the contrary, Plaintiff Edel Leon had obtained other employment within days after his termination from M.I. Quality Lawn. First, Plaintiff has submitted an April 13, 2010 letter written by former Counsel for the Defendants, Carmen Rodriguez, and submitted to the Unemployment Appeals Commission that states that Ms. Rodriguez has evidence that two days after Edel Leon's termination, Leon obtained employment elsewhere, ECF Nos. [352-1] [381-2]. That letter further states that when the Employer, who is identified as MI Quality Maintenance I, attempted to proffer evidence of the Claimant's (Edel Leon) subsequent employment in the hearing before the Unemployment Compensation Appeals, the Appeals Referee denied the admission of "any evidence that the Claimant was employed elsewhere during the time period for which he claims to be entitled to benefits." ECF No. [381-2] at 4. Ms. Rodriquez further states in the letter that the evidence would deem the Claimant's claim for unemployment compensation to be fraudulent, and would have bearing on the Claimant's credibility, ECF No. [381-2] at 4. Thus, it is clear that as early as April of 2010, Defendants' former counsel had reason to believe that any representation by Edel Leon, or any witnesses, including Kelly Phillips, that Edel Leon remained unemployed for three months after his termination for MI Quality, likely was untrue.

This conclusion is supported by a review of certain questions posed to Edel Leon by Defendants' former counsel's at Leon's July 13, 2010 deposition. During his deposition, after Leon testified that he began work at Perrine Rentals three months after he was terminated by the Defendants, Defendants' Counsel asked Leon why there would be pictures of him wearing a Perrine Rentals uniform three days after he stopped working at M.I. Quality, ECF No. [328-2] at 21-22. Such questioning suggests that Counsel believed, at the time of the deposition, that Leon was not truthful regarding the timing of when he obtained new employment subsequent to this termination by the Defendants.

Further, in preparation for an evidentiary hearing related to the Defendant's Motion, the Plaintiff propounded Requests for Admissions on Defendants' current counsel which requested, among other things that the Defendants admit or deny that on July 13, 2010, the date of Leon's deposition, Defendants had knowledge that Edel Leon was working at Perrine Rentals, ECF No. [388-1].[8] In response, the Defendants stated, "Based on Adriana Igelko's representation to Defendants that she personally observed Edel Leon's truck and Edel Leon himself at Perrine Rentals (in what seemed to be a Perrine Rentals Uniform) Defendants had a good faith basis to believe Edel Leon was working at Perrine Rentals a few days after he was terminated from Defendant's employment." ECF No. [388-1] at 1. Also, although the Defendants denied that they were in possession of any video or photographs capturing Edel Leon working at Perrine Rentals shortly after he was terminated by the Defendants, in response to another Request for Admission, Defendants admitted that they attempted to proffer evidence at Edel Leon's Unemployment Compensation hearing that Edel Leon obtained subsequent employment, ECF No. [388-1] at 4.

In addition, in Response to Plaintiff's Interrogatory No. 3, which inquired about the Defendants' basis for questioning Edel Leon at his July 13, 2010 deposition about videos of Mr. Leon working at another position after his termination, the Defendants stated, "Adriana Igelko personally witnessed Edel Leon and his truck at Perrine Rentals, in what seemed to be a Perrine Rentals Uniform, a few days after Edel Leon was terminated from Defendant's employment. On the same day she took pictures of Edel Leon." ECF No. [388-2] at 3. Based upon this record, the undersigned concludes that because the Defendants, and their Counsel, had reason to believe that Edel Leon may have obtained

---

[8] The Defendants' Motion for Relief from Judgment was originally set for an evidentiary hearing. However, after the Court held oral argument on the Motion, it became clear that an evidentiary hearing was not necessary because the Defendants were unable to demonstrate that they were entitled to relief even if the Plaintiffs had perjured themselves.

employment shortly after his termination, the Defendants had the capability to fully and fairly prepare and present their case notwithstanding Plaintiffs Leon and Kelly's arguable misconduct, *i.e.* perjury.[9]

At the oral argument on the Motion for Relief for Judgment, Defendants sought to avoid this determination by arguing that during the course of discovery in this action, whenever the Defendants sought information about when Plaintiff Leon began working at Perrine Rentals, Plaintiffs Edel Leon and Kelly Phillips would provide perjurious answers. Defendants argued that as a result, prior to the trial in this case, Defendants did not have evidence that Plaintiff Leon began working at Perrine Rentals as early as three days after being terminated by the Defendants.  The Defendants additionally stated at the oral argument that they had issued a subpoena to Lance Cooper prior to trial but Cooper failed to respond to the subpoena.  The Defendants thus argued that they did not have sufficient evidence of Edel Leon's fraud until they obtained the bank statements and payroll checks in the subsequent litigation (the Defamation Action) that reflected that Plaintiff Leon began working for Lance Cooper at Perrine Rentals much earlier than testified to by both Leon and Phillips at trial and in discovery.

The Defendants' contention on this point is without merit.  The question for purposes of establishing whether the Defendants are entitled to Rule 60(b)(3) relief under the facts of this case is whether, prior to trial, the Defendants had reason to believe that Plaintiff Edel Leon was not being truthful in his deposition and representations made during discovery regarding when he started to work for Perrine Rentals.  The trial transcript provides an affirmative answer to this query, as evidenced by the following

---

[9] As noted by the Plaintiff in Response to the Defendants' Motion for Relief from Final Judgment, regardless of whether Defendants actually had photos and/or surveillance video, or whether Defendants asked certain questions at Leon's deposition in bad faith, Defendants had knowledge of where Leon was employed long before the trial took place. With that knowledge, Defendants' counsel could have deposed Lance Cooper or subpoenaed his records relating to Edel Leon including Leon's employment application, punch cards and pay records, ECF No. [336] at 6.

exchange between Defendants' current Counsel and Edel Leon during the cross examination of Leon:

Q:      You stated yesterday you started working at Perrine Rentals, I believe your testimony was, and correct me if I'm wrong, three months after you were terminated from M.I. Quality Lawn?

A:      Approximately three months after Mitch fired me, I started working for Perrine.

Q:      Do you remember applying two to three days after you were terminated from Mitchell's Lawn or M.I. Quality Lawn Maintenance, applying to Perrine Rentals?

A:      Yes.

Q:      What you're telling the ladies and gentlemen of the jury is that it took them three months to hire you?

A:      Yes.

Q:      Sir, are you sure it wasn't three weeks?

A:      Can I explain the reason why I was hired?

Q:      Sure, once you answer my question, you can explain whatever you want.

A:      I applied later, but it took around three months to get the job.

Q:      My question is, are you sure it didn't take three weeks?

A:      Ah-ha, that's right.

Q:      Sir, what if I tell you that I have surveillance of you working at Perrine Rentals after three weeks of your termination of employment at M.I. Quality Lawn Maintenance?

A:      I would be surprised.

Q:      You would be surprised?

A:      Yes.

. . .

Q: So you didn't work at Perrine Rentals three weeks after M.I. Quality Lawn Maintenance, correct?

A: That's right.

ECF No. [315] at 9-10. Given that this line of questioning demonstrates that Defendants' Counsel suspected at trial that Leon began working at Perrine Rentals shortly after he was terminated, the Defendants have failed to offer any explanation for why an Affidavit or deposition testimony was not obtained from Lance Cooper prior to the commencement of the trial in this action. The Defendants further fail to explain why they did not seek assistance from the Court when Lance Cooper failed to respond to the subpoena served on him by the Defendants. The Defendants contend that although they failed to raise these claims to the Court earlier, once the Defendants obtained bank statements and pay check records for Leon from Lance Cooper, the Defendants acted with due diligence to verify the accuracy of all of the information discovered before presenting it to the Court, ECF No. [328] at 15. This statement begs the question of why the Defendants failed to obtain those very same bank statements and pay check records in the earlier litigation. At the oral argument, in response to the Court's inquiry on this point, Counsel for the Defendants stated that the case was a tough one with lots of moving parts. While the undersigned acknowledges that there were a variety of factual and legal issues litigated in this matter, that fact cannot serve to excuse the failure of a party to obtain the information necessary to fully and fairly present its case through the use of the discovery tools readily available to the parties.

It is for this reason that Defendants' reliance on *Abrahamsen v. Trans-State Express, Inc.*, 92 F. 3d 425 (6th Cir. 1996) is misplaced. Leaving aside the fact that the *Abrahamsen* opinion was issued by the Sixth Circuit Court of Appeals which is not binding on the undersigned, in that case, there was no dispute that the plaintiffs, who moved for relief from judgment pursuant to Rule 60(b) were taken by surprise by the

15

evidence that was not disclosed until after trial, and that, as a result, the plaintiffs were prevented from fully and fairly presenting their case. *Id.* at 429.

For the same reasons, Defendants' reliance on on *Harre v. A.H. Robins Co.*, 750 F. 3rd 1501 (11th Cir. 1985) is also misplaced. In *Harre*, the Eleventh Circuit stated:

> We are convinced that, had counsel for the Appellants *been aware* that [the witness] had not actually directed, participated in or even observed the experiments he described, it would have made a difference in their approach to the case, and particularly in their cross-examination of [that witness]. Therefore, we conclude that Appellants were prejudiced by the discrepancies in [the witness'] testimony.

*Id.* at *1505. (emphasis added). *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1342 (5th Cir. 1978), which is cited by Defendants, is also distinguishable. In *Rozier*, the reviewing court examined whether the nondisclosure of certain information prevented the plaintiff from fully and fairly presenting her case, and concluded that the disclosure of that information would have made a difference in the way plaintiff's counsel approached the case or prepared for trial. The Defendants in the case at bar have not suggested how they would have approached this case differently or prepared for trial differently had they had the "new" discovery provided by Lance Cooper. This omission is likely due to the fact that the information and evidence which the Defendants had in their possession prior to trial, or that could have obtained through an assiduous investigation, was sufficient for the Defendants to advance their theory of the Plaintiffs' fraud and misrepresentation at the trial.

In this regard, this case is very similar to *C.L. Taylor v. Texgas Corp.*, 831 F. 2d 255 (11th Cir. 1987) where the Eleventh Circuit vacated a trial court's ruling that the defendant was entitled to Rule 60(b)(3) relief where the plaintiff gave untruthful testimony at a hearing regarding pension payments he was receiving. In remanding the case to the district court, the reviewing court observed that because the defendant itself knew that it had been making pension payments to the plaintiff, even if defendant's counsel was not

aware, the defendant could not show that the plaintiff's failure to mention the pension payment prevented the defendant from fully and fairly presenting its case. *Id.* at 259-260. See also, *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1309-1310 (11th Cir. 2003) (affirming district court's denial of a motion seeking relief pursuant to Rule 60(b)(2) and (3) related to the court's summary judgment ruling because plaintiff failed to seek to depose a witness prior to summary judgment, and did not seek to stay the court's summary judgment ruling, until the plaintiffs could conduct the discovery needed to defend against the defendants' motion for summary judgment.)

Similarly, in *Brinklys v. Duke*, No. 3:14-cv-121—J-34MCR, 2017 WL 3521744, *1 (M.D. Fla. Aug. 16, 2017), the plaintiffs contended that the defendants engaged in misconduct and committed a fraud upon the Court by withholding "newly discovered" evidence, misrepresenting an arrest report, and "cherry picking" evidence to support a pre-determined conclusion regarding the defendants' motion for summary judgment. The court concluded that because the plaintiffs had in their possession or had available to them prior to the court's entry of the Summary Judgment Order, the very evidence of which they complained, the plaintiffs were not entitled to rely on that evidence to serve as the basis for relief under Rule 60(b)(3). Accord *Brown v. Press Repair Eng'g Sales & Serv., Inc.*, No. 8:07-cv-931-T-27MAP, 2008 WL 2433504, at *2 (M.D. Fla. Jun. 16, 2008) ("Plaintiff has not shown that any conduct by Defendants prevented him from fully and fairly presenting his case, as the evidence on which Plaintiff relies was in Plaintiff's possession or available to Plaintiff before the Court entered its order of dismissal.").

Finally, in *Armstrong v. The Cadle Co.*, 239 F.R.D. 688, 694 (S.D. Fla. 2007), the court concluded that the defendant failed to establish that they were entitled to Rule 60(b)(3) relief based upon the defendant's contention that the plaintiff's testimony at trial was directly contradicted by deposition testimony and answers to interrogatories previously provided by that plaintiff in two related state court actions. The court

concluded that because the defendant was fully aware of the plaintiff's answers to interrogatories and his deposition testimony prior to trial, the defendant knew that the plaintiff's trial testimony was inconsistent and therefore should have challenged the plaintiff's credibility at trial. *Id.* at 695. However, because the defendant affirmatively elected not to attack the plaintiff's credibility, defendant failed to establish that the plaintiff's purported perjury denied the defendant the full and fair opportunity to try its case. *Id.*

Accordingly, Defendants herein are not entitled to relief pursuant to Fed. R. Civ. P. 60(b)(3), because they have not demonstrated that they were unable to present their case fully and fairly due to the Plaintiffs' purported misconduct.[10]

3. The Court Need Not Determine Whether Defendants Have Established by Clear and Convincing Evidence that Plaintiff Leon and Phillips Perjured Themselves at Trial

The Defendants contend that Plaintiff Leon committed perjury during his July 13, 2010 deposition by stating that Leon waited three months before finding another job, and that Plaintiff Leon and Phillips committed perjury at trial by testifying that Leon was not compensated for health insurance at his new job, and that Leon suffered mental anguish due to cameras at the Defendants' place of employment.

As stated in *Armstrong v. The Cadle Co.*, 239 F.R.D. 688, 691 (S.D. Fla. 2007), "Misconduct may be established by proving that the opposing party willfully committed perjury." Accord *Kissinger-Campbell v. Harrell*, No. 8:08-cv-568, 2009 WL 10670803, at *1

---

[10] The undersigned notes that the Defendants also are not entitled to relief under Rule 60(b)(6), the "catchall" section that provides relief from judgment for "any other reason that justifies relief." Relief under Rule 60(b)(6) applies only to cases that do not fall into any of the other provisions of Rule 60(b). Rule 60(b)(6) cannot be used to obtain relief also available under Rule 60(b)(2) (new evidence) and 60(b)(3) (a fraud on the court or misrepresentation or misconduct by the opposing party). *Rease v. AT&T Corp.*, 358 F. App'x 73, 76 (11th Cir. 2010).

(M.D. Fla. Dec. 16, 2009) ("Misconduct may be shown by evidence that the opposing party withheld information called for by discovery or willfully committed perjury.").

Thus while perjury of the nature alleged by Defendants may provide a basis for seeking Rule 60(b)(3) relief, and it appears that the Defendants have significant evidence that may demonstrate that Plaintiffs Leon and Phillips were not truthful in their testimony regarding Leon's subsequent employment, the undersigned need not reach that determination because, as discussed above, the purported falsity of the statements made by Plaintiffs was known by the Defendants well in advance of the trial, and did not prevent the Defendants from presenting their case fully at trial.

However, that notwithstanding, the undersigned notes that even if Plaintiff Leon had obtained subsequent employment three days after he left the Defendants' employ and his new employer paid for his health insurance, those facts go to the determination of the amount of damages, and not whether Leon was retaliated against by the Defendants in violation of the FLSA, which was the cause of action litigated in this matter. In other words, a finding that Edel Leon had not been truthful about when he began working at Perrine Rentals would not, in and of itself, relieve the Defendants from a finding of liability. To the extent that the Defendants believe that Plaintiffs Leon and Phillips "invented this lawsuit for stealing thousands of dollars from Igelko and his companies", ECF No. [328] at 16, because the Defendants were able to present this theory to the jury, as discussed above, they are not entitled to Rule 60(b)(3) relief, even if such misconduct could be established.

One other point bears noting. The Defendants contend that the new evidence establishes that Plaintiff Leon, with the assistance of Kelly Phillips, orchestrated his firing so that he could advance a fraudulent claim of FLSA retaliatory termination, ECF No. [328] at 16. Specifically, the Defendants argue that Lance Cooper's statements that Edel Leon applied for and secured employment at Perrine Rentals even before he was

terminated by the Defendants is evidence of this scheme, ECF No. [328] at 16. However, Lance Cooper's Affidavit on this issue, if true, only establishes that Leon applied for a job at Perrine Rentals prior to being terminated by the Defendants and indicated to Lance Cooper that he would be available for work beginning on August 24, 2009, five days after he was terminated, ECF No. [329] at 1-2. Significantly, the Defendants fail to acknowledge that the Plaintiffs argued at trial that Edel Leon joined an FLSA lawsuit in another action on August 17, 2009, and that he was terminated, two days later, on August 19, 2009. Thus, it is not unreasonable to conclude the jury may have believed that it was not Leon's fabricated insubordination, as described by the Defendants, that resulted in his termination, but Leon's involvement in an FLSA lawsuit that prompted his firing by the Defendants. Similarly, the fact that Leon searched for other employment prior to being terminated does not demonstrate, let alone establish by clear and convincing evidence, that Plaintiffs Leon and Phillips were engaged in an elaborate scheme to perpetrate a fraud upon the Court. Rather, a jury may have believed that Leon, with or without the urging of his wife Kelly Phillips, began to look for other employment, for any number of reasons, including in anticipation that once the Defendants were made aware of his involvement in an FLSA lawsuit, that he would be retaliated against.[11]

---

[11] In any event, it is this very type of Monday morning quarterbacking that could have been avoided had the Defendants followed-up with discovery based upon their belief that Leon was not truthful regarding his subsequent employment and presented such discovery to the jury. Indeed, it undermines the very purpose of having a jury trial if, after verdict, the losing party is able to continually press the merits of its case by presenting additional evidence to the Court that could have been obtained and presented to the jury during the trial of the matter.

The peril of accepting the Defendants' approach to resolving factual inconsistencies post-trial is even more evident with regard to Defendants' contention that Edel Leon did not suffer any damages due to the surveillance cameras, but only made such false allegations so that he could claim emotional distress damages. On this issue, in their Motion, the Defendants assert that, in his Affidavit, Lance Cooper swears that "Phillips told him jokingly that her attorney was claiming emotional distress for Leon because of a purported issue Leon has with video cameras." ECF No. [328] at 13. Lance Cooper's Affidavit further states that throughout the court of his employment at Best Equipment,

## B.      Court's Inherent Authority to Set Aside Judgment

In their Motion, in addition to seeking relief pursuant to Rule 60(b)(3), the

Defendants seek relief pursuant to the Court's inherent authority, ECF No. [328] at 18.

However, it is not entirely clear whether the Defendants only seek sanctions pursuant to

the Court's inherent authority, or also seek to have the Final Judgment set aside based

upon the Court's inherent power.  This uncertainty is due to the Defendants' assertion in

the Motion that the Court may, pursuant to its inherent powers, vacate its own judgment

upon proof that a fraud has been perpetrated upon the Court, ECF No. [328] at 18.  The

Defendants made similar assertions at the oral argument on the Motion. Thus, in an

abundance of the caution, the undersigned examines whether, under the facts of this

case, the Defendants are entitled to have the Final Judgment vacated based upon the

Court's inherent authority for a fraud perpetrated against the Court.

It is beyond dispute, that the Court's inherent power allows a federal court to

vacate its own judgment upon proof that a fraud has been perpetrated upon the court.

See *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, (1944); *Universal Oil

Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, (1946).[12]  This power is expressly

---

Leon never had a problem working with Lance Cooper despite constant video
surveillance, ECF No. [329] at 4.  Thus, based upon these statements, the Defendants, in
essence, seek post-trial to have this Court hold a mini-trial on the issue of whether Kelly
Phillips, not Edel Leon, told Lance Cooper, in a joking manner, that Leon's attorney was
claiming emotional damages due to the surveillance cameras, and, assuming that
Phillips admitted that she made such a statement what she meant by that statement, and
whether Leon actually was or was not disturbed by the surveillance cameras as
evidenced by Leon's lack of being disturbed by the surveillance cameras at his
subsequent employment, as observed by Lance Cooper.  Assuming that these
convoluted issues were even relevant to establishing Plaintiff Leon's claims, such
inquiries should have been made at trial, rather than seventeen months after the jury
rendered its verdict on this matter.

[12] In *Hazel-Atlas*, the Supreme Court recognized an exception to the general rule "that
judgments should not be disturbed after the term of their entry has expired," and held
that federal courts have an inherent power to "set aside their judgments after the
expiration of the term at which the judgments were finally entered ... under certain
circumstances, one of which is after-discovered fraud." *Hazel-Atlas*, 322 U.S. at 244.

recognized in Rule 60(d)(3), which confirms that Rule 60 "does not limit a court's power to ... set aside a judgment for fraud on the court."[13] However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.   As explained by the Eleventh Circuit, in *Brown v. S.E.C.*, 644 F. App'x 957 (11th Cir. March 2, 2016),

> Rule 60(d)(3) provides that a court can 'set aside a judgment
> for fraud on the court.' We have defined 'fraud on the court'
> as 'that species of fraud which does or attempts to, defile the
> court itself, or is a fraud perpetrated by officers of the court
> so that the judicial machinery cannot perform in the usual
> manner its impartial task of adjudging cases that are
> presented for adjudication.'. . . But '[f]raud inter parties,
> without more, should not be fraud upon the court.'

*Id.* (citation omitted).  As such, perjury and fabricated evidence do not constitute fraud upon the court, because they "are evils that can and should be exposed at trial," and "[f]raud on the court is therefore limited to the more egregious forms of subversion of the legal process, . . . those we cannot necessarily expect to be exposed by the normal adversary process." *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985) (per curiam). Thus, a party commits fraud on the court where a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense. *Vargas*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) (citing *Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir. 1989)). A finding of fraud should be reserved for "only the most egregious misconduct, such as bribery of a judge or members of the jury, or the fabrication of

---

[13] Prior to the amendments to the Federal Rules of Civil Procedure in 2007, the savings clause for fraud on the court was contained in Rule 60(b), thus courts referred to Rule 60(b) as preserving a court's inherent power to set aside a final judgment for fraud on the court. As part of the stylistic amendments in 2007, the savings clause language was moved from subsection (b) to subsection (d)(3).

evidence by a party." *Patterson v. Lew*, 265 F. App'x 767, 768 (11th Cir. 2008) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)).

In *S.E.C. v. E.S.M. Group, Inc.*, 835 F.2d 270, 273-274 (11th Cir. 1988), for example, the Court stated, "perjury does not constitute fraud on the court ... [because] [t]his is the type of fraud [that] litigants should discover; it does not prevent a party from gaining access to an impartial system of justice." (internal citations and quotations omitted); *accord Patterson*, 265 F. App'x at 769; *Bryant v. Troutman*, 2006 WL 1640484, No. 3:05-CV-162-J-20MCR. (M.D. Fla. Jun. 8, 2006) (finding that "lying under oath, giving misleading answers under oath, thwarting Defendants' discovery, and concealing the existence and/or extent of both prior and subsequent injuries" in personal injury action did not constitute fraud on the court); *Dewdney v. Eckerd Corp.*, 2008 WL 2370155, No. 8:07-cv-567-T-24 TBM. (M.D. Fla. Jun. 26, 2008) (finding that numerous "significant inconsistencies" in Plaintiff's sworn testimony were not so significant as to warrant an involuntary dismissal with prejudice); *McCarthy v. American Airlines, Inc.*, 2008 WL 2517129, No. 07-61016-CIV. (S.D. Fla. Jun. 23, 2008) (finding that Plaintiff's failure to disclose prior injuries and the names of all prior treating physicians in personal injury action did not warrant the "extreme sanction of dismissal").

Further, where relief from a judgment is sought for fraud on the court, the movant must establish by clear and convincing evidence the adverse party obtained the verdict through fraud. *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007). "Conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud." *Booker v. Dugger*, 825 F.2d 281, 283–84 (11th Cir. 1987) (citations, internal quotations marks, and alterations omitted).

Here, the Defendants contend that Plaintiff Leon's perjury resulted in the entry of a fraudulent final judgment, ECF No. [328] at 18.  In support of this contention, as stated above, the Defendants assert, as they did in closing argument at trial, that Plaintiff Leon, with the assistance of Kelly Phillips, orchestrated his firing so that he could advance a fraudulent claim of FLSA retaliatory termination, ECF No. [328] at 16.  However, Defendants' claim is conclusory in nature, does not provide clear and convincing probative facts, and is not supported by any direct evidence.  Moreover, this type of allegation, even if true, does not demonstrate that a fraud was perpetrated against the *Court*, rather than a *litigant*. *See Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (stating "the 'fraud on the court' necessary to support either an independent action or to invoke the inherent power of a court is 'fraud which is directed to the judicial machinery itself ... not fraud between the parties or fraudulent documents, false statements or perjury.'").  Rather, in order to prevail on a fraud upon the court claim, a moving party must show that the opposing party's fraud subverted the integrity of the court to the extent that the fraud prevented the court from exercising impartial judgment. *R.C. ex rel. Alabama Disabilities Advocacy Program v. Nachman*, 969 F. Supp. 682, 690 (M.D. Ala. 1997), *aff'd sub nom.*, *R.C. v. Nachman*, 145 F.3d 363 (11th Cir. 1998); 11 Charles Alan Wright, et al., Federal Practice and Procedure § 2870 (3d ed. 2017).[14]

The Defendants have thus failed to allege conduct by the Plaintiffs sufficient to support a claim of fraud upon the court, and Defendants are not entitled to have the final judgment set aside based upon the Court's inherent powers.

---

[14] The undersigned recognizes that courts have found that fraud on the Court may be established where a witness and an attorney conspire to present perjured testimony. *See e.g., Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir.1987) (fraud on court may exist where witness and attorney conspire to present perjured testimony); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir.1978) (same, where party, with counsel's collusion, fabricates evidence).  In this case, the Defendants concede that Counsel for Leon was not aware of Leon's alleged fraud and perjured testimony, ECF No. [328] at 17, n. 3.

C.    The Defendants' Request for the Imposition of Sanctions
       Pursuant to Court's Inherent Authority is Untimely

Finally, perhaps recognizing that the conclusory allegations contained in their

Motion are insufficient to support a claim that the Plaintiffs Leon and Phillips perpetrated

a "fraud on the court", the Defendants assert that based on the Plaintiffs' misconduct,

the Court should impose sanctions on the Plaintiffs by striking the Plaintiffs' pleadings

and awarding Defendants all attorneys' fees and costs incurred in defending this action,

ECF No. [328] at 19.  The Defendants' request is untimely.[15]

In *Peer v. Lewis*, 606 F.3d 1306, 1315 n.10 (11th Cir. 2010), the Eleventh Circuit,

citing *Prosser v. Prosser*, 186 F.3d 403 (3d Cir. 1999), held that a motion for sanctions

pursuant to the court's inherent power was timely when it is filed before the entry of final

judgment. In *Peer,* the defendant filed motions for sanctions on October 10, 2006, and

July 9, 2007, prior to the court's denial of the plaintiff's motion for a new trial. *Id.* at 1310.

As noted in *Hill v. Clark*, 2:10-CV-00260-WCO, 2010 WL 13018385, *5 (N.D. Ga. Aug. 16,

2012),

> [A]lthough Peer did not directly hold that a motion seeking
> attorney's fees under the court's inherent power would be
> untimely if it was filed after the entry of final judgment, the
> court approvingly cited *Prosser v. Prosser*, 186 F.3d 403 (3d
> Cir. 1999), which the Eleventh Circuit characterized as
> holding that 'a motion for sanctions pursuant to the court's
> inherent power must be filed before entry of the court's final
> order' where the 'sanctionable conduct occurs and is
> discovered before final judgment....' *Peer*, 606 F.3d at 1315
> n.10.  Thus, *Peer* arguably supports the conclusion that
> movant's motion for sanctions under the court's inherent
> power is untimely, because all of the allegedly sanctionable
> conduct occurred either prior to or immediately after the
> voluntary dismissal.

---

[15] Although the Defendants correctly observe that a Court has the authority under its
inherent power to sanction litigants for perjury or other abuses, in this case, the
purported conduct alleged to have been committed by Plaintiff Leon did not result in a
fraudulent judgment that rises to the level of fraud upon the court sufficient to set aside
the judgment in this case.  The Defendants have not cited any case where a court has set
aside a judgment pursuant to its inherent power to sanction for litigation abuses, absent
a finding of fraud upon the court.

*Id. See also, e.g.*, *Roy v. Bd. of Cnty. Comm'rs*, No. 3:06cv95/MCR/EMT, 2011 WL 4904410, at *10 (N.D. Fla. Sept. 27, 2011) (unpublished) (denying motion for sanctions, sought pursuant to the court's inherent power, as untimely where sanctionable conduct occurred and was discovered before entry of final judgment) (citing *Peer*), Report and Recommendation Adopted by 2011 WL 4904409 (N.D. Fla. Oct. 14, 2011) (unpublished); *In re Benevento*, No. 10-25535-EPK, 2013 WL 1292671, at *9 (S.D. Fla. Mar. 27, 2013) (unpublished) (same); *USA Video Tech. Corp. v. Movielink*, LLC, No. Civ. A-03-368-KAJ, 2005 WL 3418407, at *2 n.4 (D. Del. Dec. 13, 2005) (unpublished) (same). Thus, the Defendants' request for the imposition of sanctions after entry of final judgment related to conduct that occurred during the course of the proceedings, that was known to the Defendants prior to entry of the final judgment, is untimely.

Even if the Defendants' request for the imposition of sanctions was not barred by the prior entry of the final judgment, the undersigned concludes that the Defendants' request for sanctions is nonetheless untimely. The Defendants correctly note that a federal judge's inherent power to award sanction is derived from the Court's need to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). In this case, the Defendants' decision to wait until over a year after the jury returned its verdict against the Defendants to seek sanctions from this Court based upon the Plaintiffs' purported misconduct and/or litigation abuses during the trial without providing a valid reason for doing so, undermines the very policy that Court's cite in support the imposition of sanctions pursuant to the Court's inherent authority. Other than unconvincingly asserting that they were unable to adequately present their claims regarding perjury by the Plaintiffs until they obtained additional discovery in a subsequent action, the Defendants have failed to

provide a reason for their failure to seek sanctions earlier in this action.  The Defendants are therefore not entitled to relief based upon the Court's inherent authority to sanction.

III.  **CONCLUSION**

Accordingly, after a careful review of the record, and for the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for Relief from Judgment and for Sanctions is **DENIED**, ECF No. [328].  It is further

**ORDERED AND ADJUDGED** that on or before December 5, 2018, the Plaintiffs may file a renewed Motion for Attorney's Fees and Costs reflecting the attorney's fees and costs incurred for only the prevailing Plaintiffs, Javier Gonzalez and Edel Leon. The Defendants may file a response on or before December 12, 2018, and the Plaintiffs may filed a reply on or before December 17, 2018.  The undersigned has determined that this shortened time frame is appropriate since the motions and memoranda addressing attorneys' fees were previously filed and denied without prejudice due to the pendency of the motion resolved by this Order.  Extensions of time related to these filings will only be granted by the Court based upon extraordinary circumstances.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida, this 29th day of November, 2018.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

Copies via CM/ECF to:
　　　All parties of record